IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CASE NO. 7:19-CV-0052 |
| 8.903ACRES OF LAND, MORE OR LESS, SITUATE in STARR COUNTY, STATE OF TEXAS; AND JOHN F.J. GUERRA, | § § § § § | |
| *Defendants.* | § | |

**DEFENDANT'S EVIDENTIARY BRIEF REGARDING JUST COMPENSATION**

Defendant John F.J. Guerra, owner of Defendant 8.903 acres of land, more or less, situate in Starr County, Texas, by his undersigned counsel and pursuant to the Court's Order dated June 1, 2020 [Doc no. 29], hereby issues his Evidentiary Brief regarding Just Compensation as follows:

**I. INTRODUCTION**

This is a condemnation lawsuit in which the United States ("Government") recently obtained access to Defendant's property along the Rio Grande River in Starr County, Texas for purposes of conducting testing and analysis in aid of building the border wall along the Mexican border.

As Defendant previously advised the Court, the Government offered all property owners the same *de minimis* amount as just compensation: $100, as identified in the Government's Declaration of Taking. Since the Order granting the Government possession, and despite offers

made by Defendant, the Government has refused to increase that offer at all.  Its offer was $100 when it filed this lawsuit and its offer today remains $100.  Defendant suspects that the Government will take that same position in its own brief regarding just compensation, especially as it has provided no evidence to Defendant of any value, and refused to respond to written discovery showing just compensation that was paid in other border wall cases.[1]

Given the Government's position, Defendant engaged an expert witness to provide an estimate of just compensation.  The analysis letter is attached as Exhibit A.  The expert's affidavit is attached as Exhibit B.  Based on this expert analysis and the attached affidavit of the landowner, attached as Exhibit C, the just compensation for the taking in this case is $8,146.25.  As discussed below, Defendant respectfully requests an award in that amount.

## II.  ARGUMENT

The proper measure of just compensation in federal takings actions is fair market value. *United States v. New River Collieries Co.*, 262 U.S. 341, 345 (1923).  Fair market value is calculated by determining the amount an informed willing buyer would have paid to an informed willing seller in an arms-length transaction, without any compulsion to execute the transaction. *Eminent Domain Jury Instructions*, 5th Cir., 13.3; *Kimball Laundry Co. v. United States*, 338 U.S. 1, 7 (1949).

The Government must "compensate [the landowner] for the loss [he] suffered by being deprived of this property for this period of time." *Uniform Appraisal Standards for Federal Land Acquisitions*, 4.6.5.12; *United States v. Michoud Indus. Facilities*, 322 F.2d 698, 708 (5th Cir.

---

[1] This behavior prompted the Court to question the Government's practice in offering $100 and to note that the $100 may be insufficient compensation.  [Doc no. 21, at p. 5]  Despite this admonition, the Government's position did not change.

1963). Courts have acknowledged that an investment in the subject property remains bound up in the ultimate reversion of the property to the landowner. *Kimball Laundry Co. v. United States*, 338 U.S. 1, 14 (1949).

In determining fair market value, just compensation should be based on "the highest and most profitable use for which the property is adaptable and needed or is likely to be needed in the near future." *Cameron Development Co. v. United States*, 145 F.2d 209, 210 (5th Cir. 1944). And when calculating just compensation, the landowner must be compensated "for the loss it suffered by being deprived of this property for this period of time." *Uniform Appraisal Standards for Federal Land Acquisitions*, 4.6.5.12; *United States v. Michoud Indus. Facilities*, 322 F.2d at 708.

The highest and most profitable use of the property is the use for which it was actually and potentially suitable and adaptable, and not necessarily what the owner was using the property for at the time of the taking. *See Eminent Domain Jury Instructions*, 5th Cir.,13.3. Thus, compensation should not rely solely on the current use of the land but must consider "all the uses for which [a property] is suitable." *Olson v. United States*, 292 U.S. 246, 255 (1934). The landowner's considerations for the highest and best use of the land must "reasonably be given substantial weight in bargaining between buyer and seller." *Olson*, 292 U.S. at 257; *Rasmuson v. United States*, 807 F.3d 1343, 1346 (Fed. Cir. 2015). For temporary acquisitions such as this, a highest and best use analysis, as well as "economic demands normally result in an owner's putting his land to the most advantageous use." *United States v. Buhler*, 305 F.2d 319, 328 (5th Cir. 1962).

On December 16, 2019, the Government obtained a 12-month easement over Defendant's

property for the purpose of surveying, making borings and conducting related work with the ultimate intent of building a barrier system along the border between the United States and Mexico in Texas. [Doc no. 21] The easement covers the entirety of Defendant's property and is not limited to any portion thereof.

Based on these legal principals and this background, the just and adequate compensation for this taking is $8,146.25. In accordance with the attached analysis letter and affidavit from David Clayton, a professional real estate appraiser whose qualifications are attached to the letter, one of the most commonly accepted methodologies for appraising the taking of a temporary access easement is by way of a lost rent analysis because, during the year of the take, there are very few surface use rights that a landowner can exercise. *See* Exhibit A at p. 2; Exhibit B. Thus, by determining a "fee value" of the land and applying a rate of return for the duration of the take (in this case, one year), an appraiser can determine the value of land rent lost to the property owner. This lost rent is the just compensation for the temporary taking of the property.

Applying this analysis to the facts of this case leads to the determination that the value of the temporary take – just compensation – is $8,146.25. Defendant is the owner of the property and provides the Affidavit attached as Exhibit C showing that the per-acre value of the land is $9,125 and that the rate of return for the property is conservatively estimated at 10%. *LaCombe v. A-T-O, Inc.*, 679 F.2d 431, 434 (5th Cir. 1982) (holding that "the opinion testimony of a landowner as to the value of his land is admissible without further qualification."); *United States v. 329.73 Acres of Land, Situated in Grenada & Yalobusha Ctys., State of Miss.*, 666 F.2d 281, 284 (5th Cir. 1982), *on reh'g*, 704 F.2d 800 (5th Cir. 1983). This estimate of value and rate of return by the Defendant is based on his personal knowledge, and his personal experience in

obtaining and selling tracts of land along the Rio Grande River in Starr County, Texas.

Defendant further notes that, as stated in Mr. Clayton's analysis, the Government's offer of $100 does not even comply with the Government's own rules regarding proper valuation procedures for federal acquisitions of land, as stated in the UNIFORM APPRAISAL STANDARDS FOR FEDERAL LAND ACQUISITION ("UASLFA"). Should the Government continue to advocate for a value of $100, the argument may be rejected.

Defendant believes from investigation that he is the first, or one of the first, litigants in this type of action to obtain an expert opinion concerning the proper valuation technique to determine just compensation for a temporary access easement. The government, notably, does not object to that technique. Thus, because this proper valuation technique is supported by expert testimony and because the government's oft-repeated position that the valuation is only $100 has been determined to be unacceptable by this Court in past cases, Defendant respectfully requests that the Court award just compensation of $8,146.25.

### III.  CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court determine that the just compensation for the taking at issue in this case is $8,146.25.

Respectfully submitted this 1st day of July, 2020.

Respectfully submitted,

CONDIT CSAJAGHY LLC

  *s/Stephen E. Csajaghy*
Stephen E. Csajaghy
Colorado Bar No. 33298
695 S. Colorado Boulevard, Suite 270
Denver, CO  80246
Tel:     (720) 287-6602
Fax:     (720) 287-6605
Email:  steve@cclawcolorado.com
*Attorney-in-Charge for Defendant John F.J. Guerra*

and

Joshua F. Bugos
Colorado Bar No. 38917
695 S. Colorado Boulevard, Suite 270
Denver, CO  80246
Tel:     (720) 287-6606
Fax:     (720) 287-6605
Email:  josh@cclawcolorado.com
*Attorney for Defendant John F.J. Guerra*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of July, 2020, I electronically filed the foregoing **DEFENDANT'S EVIDENTIARY BRIEF REGARDING JUST COMPENSATION** was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

| | |
|---|---|
| Megan Eyes | Jessica Ashley Nathan |
| Assistant United States Attorney | Assistant United States Attorney |
| 1701 W. Bus. Hwy. 83, Suite 600 | 1701 W. Bus. Hwy. 83, Suite 600 |
| McAllen, TX 78501 | McAllen, TX 78501 |
| E-mail: Megan.Eyes@usdoj.gov | E-mail: jessica.nathan@usdoj.gov |
| Attorney in Charge for Plaintiff | Attorney for Plaintiff |

  *s/Trish Schart*
  Trish Schart