United States District Court
Southern District of Texas
**ENTERED**
July 29, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 7:19-cv-00052 |
| § | |
| 8.903 ACRES OF LAND, MORE OR § | |
| LESS, in STARR COUNTY, TEXAS and § | |
| JOHN F.J. GUERRA, § | |
| § | |
| Defendants. § | |

## OPINION AND ORDER

The Court now considers the "United States' Brief on Just Compensation"[1] and "Defendant's Evidentiary Brief Regarding Just Compensation,"[2] both filed on July 1, 2020, pursuant to Court order.[3] After considering the briefs, record, and relevant authorities, the Court holds that $100 is just compensation in this case.

### I. BACKGROUND AND PROCEDURAL HISTORY

This is a land condemnation case commenced under the Declaration of Taking Act[4] concerning Tract RGV-RGC-4002 as described in the United States' Schedules C and D, approximately 8.903 acres of land in Starr County, Texas (the "Subject Property").[5] Plaintiff United States initiated this case on February 13, 2019, with a "Complaint in Condemnation,"[6] declaration of taking,[7] and notice in condemnation.[8] The United States represents that Defendant

---

[1] Dkt. No. 30.
[2] Dkt. No. 31.
[3] Dkt. No. 29.
[4] *See* 40 U.S.C. §§ 3111–18.
[5] Dkt. No. 1-1 at 6–9.
[6] Dkt. No. 1.
[7] Dkt. No. 2.
[8] Dkt. No. 3.

John F.J. Guerra is the only person who may "have or claim an interest" in the Subject Property.[9]

The United States seeks in this case a:

> temporary, assignable easement beginning on the date possession is granted to the United States and ending 12 months later, consisting of the right of the United States, its agents, contractors, and assigns to enter in, on, over and across the land described in Schedule C to survey, make borings, and conduct other investigatory work for the purposes described in Schedule B and to access adjacent lands; including the right to trim or remove any vegetative or structural obstacles that interfere with said work; reserving to the landowners, their successors and assigns all right, title, and privileges as may be used and enjoyed without interfering with or abridging the rights hereby acquired; subject to minerals and rights appurtenant thereto, and to existing easements for public roads and highways, public utilities, railroads and pipelines.[10]

The United States intends to use the easement "to conduct surveying, testing, and other investigatory work needed to plan the proposed construction of roads, fencing, vehicle barriers, security lighting, cameras, sensors, and related structures designed to help secure the United States/Mexico border within the State of Texas."[11] The United States deposited $100.00 in estimated just compensation for the taking.[12] This Court granted the United States access to the property consistent with its easement on December 6, 2019.[13] On June 1, 2020, the Court granted the parties' request to decide the issue of just compensation upon the briefs and evidence submittals.[14] The issue of just compensation is now ripe for decision.

---

[9] Dkt. No. 1-2 at 15.
[10] *Id.* at 11; *see* Dkt. No. 30-1 at 3, ¶ 13 ("The reason the United States acquires a twelve (12) month easement is due to limited contractors and resources, which requires flexibility to accommodate the resources available. Contractors work across the Rio Grande Valley and the performance of the survey will depend on when the contractor is able to go to a particular property, therefore, scheduling flexibility is needed to allow contractors to carry out their work across the entire Rio Grande Valley.").
[11] Dkt. No. 1-2 at 4.
[12] Dkt. No. 5.
[13] Dkt. No. 21.
[14] Dkt. No. 29.

## II. Discussion

The United States argues that its estimated just compensation, $100, "more than compensates for this limited right of entry with no measurable market value."[15] Defendant argues that the evidence shows that just compensation is $8,146.25.[16]

### a. Legal Standard

Under the Fifth Amendment to the United States Constitution, private property shall not be taken "for public use, without just compensation."[17] "Just compensation . . . means in most cases the fair market value of the property on the date it is appropriated."[18] "[T]he underlying principle is that the dispossessed owner 'is entitled to be put in as good a position pecuniarily as if his property had not been taken. He must be made whole but is not entitled to more.'"[19] "Under this standard [of fair market value], the owner is entitled to receive what a willing buyer would pay in cash to a willing seller at the time of the taking."[20] "[I]n general, comparable sales constitute the best evidence of market value . . . the more comparable a sale is, the more probative it will be of the fair market value of the condemned property."[21] Evidence of fair market value can come from evidence of comparable sales and from expert testimony as to the value of the subject property.[22] "In determining the market value, this Court must look not only at the present use of the property, but also at the highest and best use for which the property is

---

[15] Dkt. No. 30 at 1.
[16] Dkt. No. 31 at 2.
[17] U.S. Const. amend. V (the Takings Clause).
[18] *Kirby Forest Indus. v. United States*, 467 U.S. 1, 10 (1984).
[19] *United States v. 320.0 Acres of Land, More or Less in Monroe Cty. Fla.*, 605 F.2d 762, 780 (5th Cir. 1979) (quoting *Olson v. United States*, 292 U.S. 246, 255 (1934)).
[20] *Id.* (internal quotation marks and quotation omitted); *accord United States v. 50 Acres of Land*, 469 U.S. 24, 29 (1984) (quotation omitted) ("The Court has repeatedly held that just compensation normally is to be measured by the market value of the property at the time of the taking contemporaneously paid in money."); 5th Cir. Pattern Civ. Jury Instruction 13.3 (2014) (internal quotation marks omitted) ("Fair market value means the amount a willing buyer would have paid a willing seller in an arms-length transaction, when both sides are fully informed about all the advantages and disadvantages of the property, and neither side is acting under any compulsion to buy or sell.").
[21] *United States v. 320.0 Acres of Land, More or Less in Monroe Cty.*, 605 F.2d 762, 798 (5th Cir. 1979).
[22] *Id.* at 798 & n.64.

adaptable and needed."[23] "Ordinarily, the highest and best use for property sought to be condemned is the use to which it is subjected at the time of the taking. This is true because economic demands normally result in an owner's putting his land to the most advantageous use."[24] Where a condemnee[25] attempts to claim that the highest and best use for the property taken is something other than what the property is currently used for, the Fifth Circuit has held that the burden is on the condemnee to produce credible evidence that, at the time of taking, the use claimed was "practicable" and that "there was a reasonable likelihood that [the property] would be so used in the reasonably near future."[26] Where the taking is temporary, "the Just Compensation Clause of the Fifth Amendment requires that the government pay the landowner for the value of the use of the land during this period,"[27] or in other words "determine the figure which would compensate [the condemnee] for the loss it suffered by being deprived of this property for this period of time."[28] Market rental value is generally the appropriate measure of compensation for a temporary taking.[29] However, even if a taking is temporary, it may effect a complete deprivation of profitable use of property.[30]

---

[23] *United States v. 8.41 Acres of Land, More or Less, Situated in Orange Cty.*, 680 F.2d 388, 394 (5th Cir. 1982); *see United States v. Causby*, 328 U.S. 256, 261 (1946) ("It is the owner's loss, not the taker's gain, which is the measure of the value of the property taken.").
[24] *United States v. Buhler*, 305 F.2d 319, 328 (5th Cir. 1962).
[25] *See Condemnee*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("One whose property is expropriated for public use or taken by a public-works project.").
[26] *320.0 Acres of Land*, 605 F.2d at 814; *accord United States v. 62.50 Acres of Land More or Less, Situated in Jefferson Par., La.*, 953 F.2d 886, 890 (5th Cir. 1992) ("Potential uses must overcome a presumption in favor of the existing use. A landowner can overcome this presumption only by showing a reasonable probability that the land is adaptable and needed for the potential use in the near future.").
[27] *First English Evangelical Lutheran Church of Glendale v. Los Angeles Cty.*, 482 U.S. 304, 319 (1987).
[28] *United States v. Michoud Indus. Facilities*, 322 F.2d 698, 708 (5th Cir. 1963).
[29] *Kimball Laundry Co. v. United States*, 338 U.S. 1, 7 (1949).
[30] *See id.* at 14 (discussing that the condemnee's investment "remained bound up in the reversion of the property" so the United States "could no more completely have appropriated the [condemnee's] opportunity to profit" than by putting the condemnee completely out of business for a period of time).

"Considerations that may not reasonably be held to affect market value are excluded."[31] These considerations include special or sentimental value to the condemnee, the change in value of separate tracts that are affected by the taking,[32] appraisal and attorneys' fees, loss of profits, damage to goodwill, and the expense of relocation or other consequential losses.[33] "The burden of establishing the value of the land sought to be condemned [rests] with the landowner."[34] If the landowner fails to establish that just compensation is higher than the United States' estimate, the Court may rely on exclusively the United States' evidence.[35]

### b. Analysis

#### 1. *Evidence Submitted by Defendant Landowner*

Defendant's justification for just compensation at $8,146.25 relies on an affidavit[36] from a professional real estate appraiser, David Clayton, who used a "lost rent analysis" to conclude that, because the entirety of the Subject Property is taken and "there are very few surface use rights that a landowner can exercise" during the year of the easement, the value of land rent lost is $8,146.25.[37] David Clayton has a Juris Doctor degree, a Bachelor of Arts in economics, and numerous appraisal licenses and designations, such as designation as a "Senior Appraiser Specialist" from the National Association of Independent Fee Appraisers and designation as a "General Certified Appraiser" by the State of Colorado.[38] The Court holds that David Clayton is qualified to submit expert testimony on appraisal under Federal Rule of Evidence 702. Mr.

---

[31] *United States v. 50 Acres of Land*, 469 U.S. 24, 29 (1984) (quotation omitted).
[32] *See United States v. 101.88 Acres of Land, More or Less, Situated in St. Mary Par., La.*, 616 F.2d 762, 772 (5th Cir. 1980) (holding that a landowner is entitled only to recover for the actual condemnation and not for any theory of damages to remaining land or damages that will be incurred in the future).
[33] *Tenn. Gas Pipeline Co., LLC v. Permanent Easement for 7.053 Acres*, 931 F.3d 237, 247–48 (3d Cir. 2019) (collecting United States Supreme Court cases).
[34] *United States v. 62.50 Acres of Land More or Less, Situated in Jefferson Par., La.*, 953 F.2d at 890 (5th Cir. 1992) (citing *United States ex rel. Tenn. Valley Auth. v. Powelson*, 319 U.S. 266, 273–76 (1943)).
[35] *United States v. 8.41 Acres of Land, More or Less, Situated in Orange Cty., Tex.*, 680 F.2d 388, 395 (5th Cir. 1982).
[36] Dkt. No. 31-2.
[37] Dkt. No. 31 at 4.
[38] Dkt. No. 31-1 at 5.

Clayton explains that just compensation can be calculated in this case as land rent lost for one year, first by estimating "fee value" and then applying a "rate of return"[39] for one year, the duration of the taking.[40] For example, if the "market value for the fee interest is $5,000 per acre," and the "appropriate rate of return is 10% per year," then the land rent lost would be $4,450 for the Subject Property, illustrated by the following formula:

| | |
|---|---|
| Land Size: | 8.903 acres |
| Value/Acre: | × $5,000 per acre |
| Hypothetical fee value: | $44,500 |
| Rate of return: | × 10% |
| Duration in years: | × 1 (for one year) |
| **Lost rent:** | **$4,450**[41] |

Mr. Clayton asserts that $100 is inadequate compensation because "the value of the fee interest in the land would have to be as low as $112.32 per acre" under this formula.[42] However, Mr. Clayton admits this formula is only "[o]ne commonly accepted methodology" out of an unknown number of other methodologies.[43]

Defendant argues that the fee value of the Subject Property is $9,125 per acre.[44] The attached affidavit from Defendant John F.J. Guerra avers that "[t]he value of real property in this area is $9150 per acre."[45] The discrepancy between Defendant's brief and Defendant's affidavit is unexplained. Defendant's valuation is based on his following testimony:

> I recently completed the sale of a 20.78 acre tract of land less than two miles from the real property at question herein for $190,000. The per acre figure in that sale was $9143. Both the 8.903 acre tract and the 20.78 acre tract abut established residential subdivisions and, thus, the highest and best use of these properties would be for residential development. Approximately ten years ago, I sold two

---

[39] *Rate of Return*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The annual income from an investment, expressed as a percentage of the investment.").
[40] *Id.* at 2.
[41] *Id.* at 2–3.
[42] *Id.* at 3.
[43] *Id.* at 2.
[44] Dkt. No. 31 at 4 (citing Dkt. No. 31-3).
[45] Dkt. No. 31-3 at 2, ¶ 6.

residential lots adjacent to the 8.903 acre tract (and approximately 6500 square feet each) for a total of $25,000. One acre comprises 43,560 square feet.[46]

Defendant does not provide the per-acre valuation from the sale of the residential lots. The per-acre valuation is shown by the following formula:

| | |
|---|---|
| Residential lot size: | 6500 ft² |
| Number of lots: | × 2 |
| Property size: | 13,000 ft² |
| Value: | ÷ $25,000 (sale price) |
| Value per square foot: | $1.92 |
| Square feet in an acre: | × 43,560 |
| **Value per acre:** | **$83,635.20** |

The $83,635.20 and $9,143 per-acre values in Defendant's affidavit differ by a factor greater than 9. Defendant does not explain why the per-acre value of the residential lot sales is relevant or the discrepancy between the two per-acre valuations, but the Court assumes that the recent nearby 20.78-acre tract sale is more probative of the fee value of the Subject Property than the decade-old residential lot sales. In any case, "the opinion testimony of a landowner as to the value of his land is admissible without further qualification. Such testimony is admitted because of the presumption of special knowledge that arises out of ownership of the land."[47] Although the Court will not accept speculative "value to me" testimony from a landowner, so long as the landowner's opinion has a rational foundation and is not contradicted by the landowner's testimony, it is probative of the market value of the land.[48] Defendant concludes that the fee value is $9,150 per acre and a "reasonable rate of return for the property" is 10%, which is based on the following knowledge:

---

[46] *Id.* at 2, ¶¶ 3–5.
[47] *United States v. 329.73 Acres of Land, Situated in Grenada & Yalobusha Ctys., Miss.*, 666 F.2d 281, 284 (5th Cir. 1982) (citing *United States v. 3,698.63 Acres of Land, Etc., N.D.*, 416 F.2d 65, 67 (8th Cir. 1966) & *United States v. Sowards*, 370 F.2d 87, 92 (10th Cir. 1966)).
[48] *See Sowards*, 370 F.2d at 92; *United States v. 79.20 Acres*, 710 F.2d 1352, 1357 (8th Cir. 1983) (citing *3,698.63 Acres*, 416 F.2d at 66–67).

> I have owned this tract, and other tracts in the area, for many years and have personal knowledge of sales of other parcels in this area. My opinion of value is based on my experience, my ownership of this land and my knowledge of the per-acre sales prices of other tracts in the area. I am also a licensed real estate agent in the State of Massachusetts.[49]

Using David Clayton's formula, with a fee value of $9,150 and a rate of return of 10%, the land rent lost would be $8,146.25; a fee value of $9,125 under the same formula returns a land rent lost of $8,123.99.

### 2. Evidence Submitted by Plaintiff United States

The United States first argues that Defendant has failed to adduce any evidence of the value for the temporary taking at issue, so the Court should default to the United States' estimate.[50] The Court disagrees and holds that the evidence Defendant adduced is at least some evidence of market value for the taking that is higher than the United States' estimate and requires more than perfunctory analysis. As this Court recently held, there is evidence refuting the United States' position that temporary takings have no value at all.[51]

Plaintiff United States next relies on evidence familiar to the Court to establish just compensation at $100.[52]

> The United States, for its part, cites a declaration under penalty of perjury from Roger Jennings, "a licensed real estate appraiser and the Chief Supervisory Review Appraiser with the United States Army Corps of Engineers." Mr. Jennings declares that he has significant appraisal experience, including in the Rio Grande Valley where the Subject Property is located, and that in his personal judgment and in the judgment of his associates and as reflected by appraisals completed by Mr. Jennings's associates, temporary rights of entry have no measurable market value especially where the easement "does not change the uses

---

[49] Dkt. No. 31-3 at 2, ¶¶ 6–7.
[50] Dkt. No. 30 at 4, ¶¶ 8–9.
[51] *See United States v. 30.00 Acres*, No. 7:19-cv-270, 2020 WL 4188610, at *6, 2020 U.S. Dist. LEXIS 127817, at *13 (S.D. Tex. July 21, 2020) ("The declarations of Defendant and Mr. Moreno establish that Defendant has leased an annual hunting lease over the Subject Property for $250.00, which pushes back against Mr. Jennings' contention that temporary rights of entry have no measurable market value at all.").
[52] *See United States v. 30.00 Acres*, No. 7:19-cv-270, 2020 WL 4188610, at *5, 2020 U.S. Dist. LEXIS 127817, at *11 (S.D. Tex. July 21, 2020) (reliance on Roger Jennings); *United States v. 30.00 Acres*, No. 7:19-cv-00234, 2020 U.S. Dist. LEXIS 100770, at *11 (S.D. Tex. June 9, 2020) (reliance on Roger Jennings).

> for which the property is legally available, has no impact on any potential physically possible use of the property, and does not impair the use or sale of the property for any of the available uses." The United States relies on this declaration for its position that nominal compensation of $ 100 is just compensation, and is even more generous than $ 1 that would also be just compensation, for the easement at issue.[53]

The Court previously accepted this evidence as probative expert evidence of just compensation,[54] and does so again today. Plaintiff also relies on a single Western District of Virginia case from 2015, in turn relying on various cases from around the country in the 19th century, but the Court does not find this case persuasive because it does not address valuing just compensation for a temporary easement.[55] The United States also notes that surveyors minimize "any impact their presence may have on any activity the landowner is performing or wants to perform on their land"[56] and that Defendant may seek separate compensation for any unanticipated harm to the land.[57]

### 3. Court's Holding on Just Compensation

The Court does not know what to make of Defendant's "rate of return." Although the per-acre fee value of the land is couched in a recent comparable sale,[58] the 10% rate of return appears to be plucked from thin air. The landowner asserts that, in his opinion, the reasonable rate of return is 10% "based on [his] experience, [his] ownership of this land and [his] knowledge of the per-acre sales prices of other tracts in the area,"[59] but provides no other substantiation of this rate. Defendant does not explain what about his experience, ownership, or comparable prices led him to conclude that 10% is appropriate; Defendant's assertion is conclusory. The Court holds

---

[53] *30.00 Acres*, 2020 U.S. Dist. LEXIS 100770, at *11–12 (footnotes omitted) (quoting Dkt. No. 30 at 5, ¶ 11 & Dkt. No. 30-2); *see* Dkt. No. 30 at 8. ¶ 17.
[54] *Id.* at *12.
[55] Dkt. No. 30 at 7 n.41 (citing *Klemic v. Dominion Transmission, Inc.*, 138 F. Supp. 3d 673, 689 (W.D. Va. 2015)).
[56] *Id.* at 8–9, ¶ 17 (citing Declaration of Jason Powell, Dkt. No. 30-1 at 3, ¶ 15).
[57] *Id.* at 9, ¶¶ 18–19.
[58] Dkt. No. 31-3 at 2, ¶ 3 ("I recently completed the sale of a 20.78 acre tract of land less than two miles from the real property at question herein for $190,000. The per acre figure in that sale was $9143.").
[59] *Id.* ¶ 7.

that the 10% rate lacks a rational foundation and is too speculative to be accepted on the basis of Defendant's affidavit.[60]

Similarly, Defendant's expert David Clayton does not couch the 10% rate of return in any substance. David Clayton simply "assume[s]" that "the appropriate rate of return is 10% per year," but offers no evidence or rationalizations for why this assumption is appropriate.[61] Although David Clayton cites the "Uniform Appraisal Standards for Federal Land Acquisition" and even quotes from it at length, nowhere in Mr. Clayton's analysis does he connect a 10% rate of return to the appraisal standards or any other uniform or commonly accepted standard or otherwise explain why 10% is an appropriate rate of return in these circumstances.[62] The Court finds the following passage instructive:

> We do not hold that the use of the capitalization of income method to determine the value of a borrow pit should be rejected as inappropriate in every case. On the contrary, if all of the factors which must necessarily be taken into account are established by proper evidence, there would appear to be no valid reason to judicially condemn, prohibit or outlaw the use of this method. We do hold, however, in the instant case that the determination of the several elements or factors which were here relied upon was based upon pure speculation and was without objective evidential support.[63]

The Court has no basis to find that a rate of 10% is "based on sufficient facts or data" or is "the product of reliable principles and methods" applied to this case.[64] Defendant cites no authority where a similar expert analysis was accepted by any court.[65] In sum, the Court cannot accept

---

[60] *See supra* notes 47–48 and accompanying text.
[61] *See* Dkt. No. 31-1 at 2–3.
[62] *See id.* at 1–2.
[63] *United States v. Whitehurst*, 337 F.2d 765, 776 (4th Cir. 1964), *cited in United States v. 320.0 Acres of Land, More or Less in Monroe Cty., Fla.*, 605 F.2d 762, 782 (5th Cir. 1979); *cf. United States v. 69.1 Acres of Land, More or Less, Situated in Platt Springs Twp.*, 942 F.2d 290, 293–94 (4th Cir. 1991) (discussing the suspect nature of the income capitalization method); *United States v. 47.14 Acres of Land, More or Less, Situate in Polk Cty., Iowa*, 674 F.2d 722, 726 (8th Cir. 1982) ("[T]he capitalization of income method may be appropriate in certain cases, but where such method is used all of the factors that must necessarily be taken into account should be established by proper evidence. Where several of the elements or factors relied on by the commission are without objective evidential support, that method is faulty and can obviously lead to unfounded and enhanced valuations.").
[64] FED R. EVID. 702.
[65] *See* Dkt. No. 31 at 4–5.

Defendant's "lost rent calculation" as expert testimony or evidence of the value of the property or taking.[66]

Furthermore, Plaintiff United States' easement is "minimal in scope, limited in time, and reserve[s] to the landowner all rights and interests that do not interfere with the United States' narrow ability to survey and assess the property."[67] Although David Clayton explains that a temporary easement may be appraised by a "lost rent calculation," because, during the 1-year period that the United States maintains its temporary access easement, "there are few rights of surface use that the landowner can exercise,"[68] the Court is not persuaded that the landowner's rights are so severely cabined. For example, Plaintiff has not presented any evidence that he cannot sell hunting access to his land or develop the land for agricultural or residential purposes even during the existence of the temporary easement.[69] In short, Mr. Clayton's assertion is conclusory. In the absence of any evidence or testimony supporting Defendant's argument that the United States' estimated valuation was too low, the Court will follow its prior precedent and hold that Roger Jennings's testimony is sufficient substantiation of the $100 nominal compensation.[70]

### III. HOLDING

For the foregoing reasons, the Court finds $100.00 to be just compensation for the easement granted in this case.[71] The Court **ORDERS** the parties to file dismissal documentation

---

[66] *Cf. supra* note 22.
[67] Dkt. No. 30 at 1.
[68] Dkt. No. 31-1 at 2.
[69] Again, the burden is squarely on the condemnee to refute the United States' estimate of just compensation. *See supra* notes 24, 34–35.
[70] *United States v. 30.00 Acres*, No. 7:19-cv-00234, 2020 U.S. Dist. LEXIS 100770, at *11–12 (S.D. Tex. June 9, 2020); *United States v. 30.00 Acres*, No. 7:19-cv-00270, 2020 WL 4188610, at *5 (S.D. Tex. July 21, 2020) ("Because the defendant offered nothing other than her own declaration regarding the speculative hunting lease from a local car dealership, the Court held that $100.00 was just compensation based on the declaration of Mr. Jennings."); *supra* note 35.
[71] *See* Dkt. No. 21.

requesting the Court disburse the $100 just compensation on deposit by **August 5, 2020**. Alternatively, the Court **ORDERS** the parties to appear for a status conference on **Tuesday, August 11, 2020 at 9:00 a.m.** and to file a status report in preparation for the conference by **August 5, 2020**.

    IT IS SO ORDERED.

    DONE at McAllen, Texas, this 29th day of July 2020.

                                                                Micaela Alvarez
                                            United States District Judge